### THE LEBA.

### THE OSPREY.
No. 1948–KA.

District Court of Alaska, First Division. Ketchikan.
May 18, 1937.

A. H. Ziegler, of Ketchikan, for plaintiff.

H. G. McCain, of Ketchikan, for defendant.

ALEXANDER, District Judge.

It appears from the testimony that at the time of the accident The Osprey was proceeding from Klawock Alaska to the fish grounds in the vicinity of Noyes Island on the west coast of Prince of Wales Island; that The Leba had been on her way to the same point from Craig, Alaska; that The Osprey was proceeding on the course indicated from Klawock through San Christoval Channel on the line indicated by the black line on libelant's exhibit number one. That The Osprey had proceeded on the upper black line to a point indicated by the letter "C" or the "X" in red pencil when it is alleged to have discovered that its engine was missing on one cylinder and turned to retrace its course with the intention of returning to Craig for repairs.

That when The Osprey had passed the red blinker and black buoy indicated on said map she sighted The Leba approaching approximately a quarter of a mile away, and signaled by two blasts of her whistle for a starboard passing. That again, when within forty or fifty yards of The Leba The Osprey signaled the second time for a starboard passing. That after said second signal The Leba suddenly altered her course to starboard and rammed The Osprey on her starboard side, causing damage to The Osprey resulting in an explosion thereon and the sinking of said vessel within ten minutes or so.

It is charged that The Leba was negligent in that at the time of and preceding the collision she had no lookout, the absence of which contributed directly to the collision; and that The Leba and those in charge were negligent in failing to give any warning to The Osprey that she was about to suddenly alter her course to starboard as she did; and in failing to comply with the signals given by The Osprey for a starboard passage; and in having an improper and inefficient man at the wheel when the course of The Leba was suddenly altered, and in failing to have in the proper place on The Leba a competent and efficient lookout.

The uncontradicted evidence shows that at the time of and preceding the collision The Leba had no lookout; that before The Osprey was sighted by The Leba the captain of The Leba who had been at the wheel before, turned it over to Willie Skeeks, a member of his crew, and went below to do some work on the engine and was still there when the alleged collision occurred, leaving said Skeeks alone at the wheel and without any lookout. The uncontradicted evidence further shows that The Leba failed to give any answering signal or warning to The Osprey that she heard the signal of The Osprey or that she was about to change her course to starboard as she did, or any signal whatever indicating her intentions.

I might here say that there might have been some misunderstanding on the part of the navigating officer of The Leba as to whether The Osprey blew one or two blasts of her whistle, but even assuming that The Leba did misunderstand the signal of The Osprey it was at least her duty under the circumstances then existing to have answered the signal and having indicated thereby her intentions as to the passing; and it is this failure to answer the signals of The Osprey in any manner under the circumstances existing, as testified to by her own crew, that undoubtedly caused the confusion and ultimate wreck.

The evidence further shows that the person left at the wheel by the captain of The Leba was young, (23 years old) of little experience, as he himself repeatedly testified, and utterly incompetent to navigate the vessel at that time (about 1 o'clock A.M.) and in a narrow and dangerous passage such as that where the accident occurred. It was a combination of these that, in the opinion of the court, caused the accident, and not any fault on the part of The Osprey, which the evidence shows was in command of George James, an especially intelligent native, thirty-four years old, who had been a fisherman and spent his life on boats since he was a small boy; had been captain of The Osprey for two years, and before that captain of Libby Mc-

Neil & Libby seine boats and for others for ten or twelve years, and as such has operated boats all over the West Coast area including the one in question and was thoroughly familiar with its waters.

The evidence further shows that Arthur Demmert was at the wheel of The Osprey when The Leba was sighted, with Captain James as lookout and supervising the navigation of the vessel; that he cautioned Arthur Demmert to keep an eye on the boat and to whistle for a starboard passing. That in passing between the black buoy and the red blinker The Osprey passed within a hundred yards of the black buoy on the left-hand side of the channel between them and that there was approximately half a mile of water between The Osprey and shoal water on the right-hand side of The Osprey at the place where the collision took place; that receiving no answer to its signal and noting the near approach of The Leba The Osprey signaled a second time for a starboard passing, when The Leba suddenly altered her course to starboard and rammed The Osprey from her starboard sinking her with everything on board except the crew who escaped with difficulty in the boat's skiff.

The evidence does not confirm the story of the owner's witnesses to the effect that the engine of The Leba was disabled, as the witnesses all agree that it was about seven and a half miles from the point of the collision to Craig, where The Leba proceeded after the accident, and the witnesses all testified that the distance was made within an hour to an hour and a quarter, which is good time for boats of that type under the attendant circumstances.

On the question of damages the testimony was exceedingly brief and unsatisfactory. There is no evidence as to the value of the vessel or the seine she was admittedly carrying except that of its owner, George Demmert, who testified that the boat was of the value of $6,000 and that the value of the seine was $900. There was some testimony to the effect that two of the crew of The Osprey were burned, by the fire resulting from the explosion which oc-

curred shortly after the impact, but the evidence is exceedingly meagre as to the nature or extent of their injuries, and no evidence as to the amount expended for medical care or hospital bills, if any, nor is there any evidence of the value of the personal property alleged to have been lost by the crew, or the supplies aboard. It is not the business of the court to speculate as to what may have been lost or its value, but it is the duty of the libelant to make proof of these items if it expects to recover anything therefor, and the meagre proof adduced is wholly insufficient to establish any claim therefor.

It is therefore the finding of the court that the collision in question was caused wholly by the negligence of the crew of The Leba as already indicated, and that the libelant is entitled to recover the value of The Osprey hereby found to be $6,000, and the value of the seine lost aboard her, found to be $900, and that the libelant recover his costs herein.